BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
proach@bholaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD M. GUTIERREZ, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK N.A. d/b/a WELLS FARGO HOME MORTGAGE and WELLS FARGO REAL ESTATE TAX SERVICES, LLC,<br><br>Defendants. | Case No.:  3:12-CV-01135-SI<br><br><u>CLASS ACTION</u><br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR:<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE §17200, *et seq.*<br>2. CONVERSION<br>3. MONEY HAD AND RECEIVED<br>4. BREACH OF CONTRACT<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Ronald M. Gutierrez brings this action on behalf of himself and all others similarly situated against defendants Wells Fargo Bank N.A. d/b/a Wells Fargo Home Mortgage and Wells Fargo Real Estate Tax Services, LLC ("WFRETS") (collectively "Wells Fargo") and states:

## NATURE OF THE ACTION

1. Wells Fargo charges plaintiff and the other members of the class of mortgage borrowers a "Tax Service Fee." The Tax Service Fee is charged to reimburse Wells Fargo for the expense it incurs for paying real property taxes on behalf of its customers for whom Wells Fargo maintains an escrow or impound account created to collect and pay real property taxes and hazard insurance. The problem, however, is that plaintiff and other members of the class pay their property taxes directly to the taxing entity and did not create an escrow account with Wells Fargo. For these consumers, the Tax Service Fee is improperly assessed and collected. This action is brought to recover this improperly assessed fee.

2. The Tax Service Fee is collected by Wells Fargo at the close of escrow. According to Wells Fargo, the Tax Service Fee is collected to cover its costs of handling payment of real property taxes assessed on property financed by loans originated by Wells Fargo. The Tax Service Fee is properly collected from a borrower when Wells Fargo establishes an escrow account and pays real property taxes on that borrower's behalf.

3. However, about 10% of borrowers with a Wells Fargo home loan directly pay their own real property taxes. For these borrowers, including plaintiff and the members of the class, Wells Fargo does not establish an escrow account for the payment of taxes and does not pay the borrowers' real property taxes. Nonetheless, Wells Fargo charges and collects the Tax Service Fee from these borrowers even though they have no escrow account and pay their own real property taxes. This action seeks damages and restitution of the Tax Service Fee to plaintiff and the class and injunctive relief to stop Wells Fargo's ongoing misconduct.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000

and is a class action in which greater than two-thirds of the class members are citizens of states different from defendants.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Wells Fargo:

(a)     is headquartered in this district;

(b)     is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

(c)     does substantial business in this district; and

(d)     is subject to personal jurisdiction in this district.

6.     Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c) defendant Wells Fargo is headquartered in San Francisco County, plaintiff's property that is the subject of this action is situated in San Francisco County, this action otherwise arises in San Francisco County, and it is therefore appropriate to assign this action to the San Francisco Division.

**PARTIES**

7.     At all times relevant to this matter, plaintiff Ronald Gutierrez resided and continues to reside in San Francisco, California. During the class period, Wells Fargo issued two home loans to plaintiff on his real property located at 514 4th Avenue, San Francisco, California. In connection with both loans, defendants charged and collected from plaintiff a "Tax Service Fee" in the amount of $65. Wells Fargo does not maintain an impound account for Mr. Gutierrez for the payment of real property taxes and does not and never has paid real property taxes on behalf of Mr. Gutierrez. Mr. Gutierrez does and has always paid his real property taxes directly. As a result of defendants' business practices described herein, plaintiff suffered injury in fact and lost money or property.

8.     Defendant Wells Fargo Bank N.A. is a corporation that is headquartered in San Francisco, California. Wells Fargo is registered to do business in the State of California, and does business in the State of California. From its headquarters in California, Wells Fargo

markets, sells, and services residential home mortgage loans throughout the United States, including to tens of thousands of consumers in the State of California. Wells Fargo Home Mortgage is the largest mortgage lender in the United States. In 2010, Wells Fargo closed over 928,000 loans that totaled over $216 billion in loan volume. In 2011, Wells Fargo closed over 700,000 loans that totaled over $164 billion in loan volume. Up to 10% of the loans closed by Wells Fargo were originated without an escrow account, meaning these borrowers chose to pay their own property taxes. Over the last four years, over 25% of Wells Fargo's home mortgage loans were originated in California, Florida, Washington, New York and New Jersey. Defendant Wells Fargo Real Estate Tax Services, LLC (a subsidiary of Wells Fargo N.A.) is a Delaware limited liability company that monitors and handles the payment of real property taxes for certain Wells Fargo borrowers.

## FACTUAL ALLEGATIONS

9. Mortgage transactions are expensive for the consumer in part because of the substantial closing costs charged by lenders such as Wells Fargo. As a condition to obtaining a loan, Wells Fargo requires its borrowers to pay closing costs. Wells Fargo makes this requirement in its commitment letter which states that the borrower is "to pay all closing costs."

10. As one of the closing costs, Wells Fargo required all of its borrowers to pay a "Tax Service Fee." As described by Wells Fargo, the Tax Service Fee "covers the cost of your lender engaging a third party to monitor and handle the payment of your property tax bills." The third party is Wells Fargo's subsidiary, defendant Wells Fargo Real Estate Tax Services, LLC.

11. If an escrow account is established for the payment of property taxes, the Tax Service Fee is assessed to cover the costs Wells Fargo anticipates incurring over the life of the loan. Wells Fargo explains that the escrow account is used to "collect[] a portion of the funds needed annually for taxes[.]" "On specific due dates Wells Fargo . . . makes tax, . . . payments on your behalf." In order to make the tax payments on the borrowers' behalf, Wells Fargo obtains from the relevant tax authorities the tax amounts owed and the property tax due dates

1  for each of its borrowers. Wells Fargo warns its borrowers that if they do not establish an escrow account with Wells Fargo, and "you don't want Wells Fargo [] to make [tax] payments for you, they are your responsibility under your mortgage terms. That's why it is important to budget accordingly."

12. Wells Fargo requires its borrowers to establish an escrow account for the payment of real property taxes unless the borrower meets certain conditions and elects to waive escrow. The conditions include, among other things, a history of savings and a history of paying taxes with no delinquencies. In order to waive the escrow account, the borrower must agree to provide evidence that they have paid their real property tax bill and must agree to pay any expenses incurred by the loan servicer to correct any delinquency in real property tax payments. If the borrower qualifies for and elects to waive escrow, Wells Fargo affirms that "[n]o escrow services will be provided initially for payment of taxes . . . by the loan servicer."

13. The Tax Service Fee collected by Wells Fargo for the payment of real property taxes is listed as an "Additional Settlement Charge" on the HUD-1 settlement statement. The HUD-1 settlement statement, as described by Wells Fargo to its borrowers, "itemizes the services provided to you and the fees charged for those services." The Tax Service Fee as itemized on the HUD-1 is $65 to "WFRETS."

14. Wells Fargo required all of its borrowers to pay the Tax Service Fee as a closing cost even when the borrower waived escrow and even when WFRETS did not and would not pay real property taxes and no escrow services were provided.

15. Plaintiff, as well as approximately 10% of Wells Fargo borrowers, directly paid their real property taxes. Wells Fargo does not maintain an escrow account for these borrowers and does not pay property taxes on their behalf. Neither Wells Fargo nor WFRETS handles the payment of real property taxes for such borrowers. At the time of the HUD-1 and at the time it took possession of the Tax Service Fee, Wells Fargo knew that plaintiff and the members of the class had elected to directly pay their own real property taxes and that Wells Fargo would not provide escrow services or pay real property taxes on their behalf.

1  16. Nonetheless, Wells Fargo charged and collected from plaintiff and other class members the $65 Tax Service Fee. The Tax Service Fee was not negotiable and Wells Fargo would not waive the Tax Service Fee.

**PLAINTIFF GUTIERREZ**

17. In June of 2011, plaintiff closed escrow on a home in San Francisco, California. In connection with his purchase, plaintiff secured a mortgage from Wells Fargo. Wells Fargo required plaintiff to pay all closing costs associated with his mortgage loan. The total settlement charges paid by plaintiff for the loan were over $4,500.00 with closing costs that included an appraisal fee, a credit report fee, a recording fee, title charges, a flood certification fee, and a Tax Service Fee. The Tax Service Fee was listed as an Additional Settlement Charge on the HUD-1 in the amount of $65.

18. At the time of closing, Wells Fargo knew that plaintiff did not have an escrow account for the payment of his real property taxes and would directly pay his own real property taxes. In order to waive the escrow account and pay his own property taxes, plaintiff had to meet the conditions for waiver. In order to waive escrow, Wells Fargo also required that plaintiff agree to timely provide, at Wells Fargo's request, evidence that he had paid his tax bill. In order to waive escrow, plaintiff further agreed to pay any expenses incurred by the loan servicer in the event he was delinquent in his tax payments. Wells Fargo nonetheless required plaintiff to pay the $65 Tax Service Fee as listed on the HUD-1 even though it did not establish an escrow account and did not pay real estate taxes on plaintiff's behalf. That is, Wells Fargo never engaged a third party to collect a portion of the funds needed annually for taxes or, on specific due dates or otherwise, make tax payments on plaintiff's behalf, nor did Wells Fargo itself pay real property taxes on plaintiff's behalf. For plaintiff's benefit, Wells Fargo never "engage[ed] a third party to monitor and handle the payment of [plaintiff's] property tax bills," nor did it itself. During the course of this loan, plaintiff directly monitored his real property tax liability and paid his own property taxes.

19. In December 2011, plaintiff refinanced his home loan on his San Francisco property with Wells Fargo. Wells Fargo required plaintiff to pay all closing costs to refinance

1  his loan. The total settlement charges paid by plaintiff for the loan were over $2,000.00 with
2  closing costs that included an appraisal fee, a credit report fee, a recording fee, title charges, a
3  flood certification fee, and a Tax Service Fee. The Tax Service Fee was listed as an
4  Additional Settlement Charge on the HUD-1 in the amount of $65.

5    20. At the time of closing, Wells Fargo knew that plaintiff would not have an
6  escrow account for the payment of his real estate taxes and would directly pay his real property
7  taxes. In order to waive the escrow account and pay his own property taxes, plaintiff had to
8  meet the conditions for waiver. In order to waive escrow, Wells Fargo also required that
9  plaintiff agree to timely provide, at Wells Fargo's request, evidence that he paid his tax bill. In
10 order to waive escrow, plaintiff further agreed to pay any expenses incurred by the loan
11 servicer in the event he was delinquent in his tax payments. Wells Fargo nonetheless required
12 plaintiff to pay the $65 Tax Service Fee as listed on the HUD-1 even though it did not
13 establish an escrow account and did not pay real property taxes on plaintiff's behalf. That is,
14 Wells Fargo never engaged a third party to collect a portion of the funds needed annually for
15 taxes or, on specific due dates or otherwise, make tax payments on plaintiff's behalf, nor did
16 Wells Fargo itself pay real property taxes on plaintiff's behalf. For plaintiff's benefit, Wells
17 Fargo never "engage[ed] a third party to monitor and handle the payment of [plaintiff's]
18 property tax bills," nor did it itself. During the course of this loan to date, plaintiff directly
19 monitored his real property tax liability and paid his own property taxes.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this lawsuit on behalf of himself and the proposed class members under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The proposed class consists of:

> All persons in the states of California, Florida, Washington, New York and New Jersey who, at any time up to the date notice is provided to the class, obtained a home mortgage loan from Wells Fargo, and were charged a tax service fee by defendants, but directly paid their real property taxes on the subject property.

Excluded from the class are defendants and any of its officers, directors and employees.

22. *Numerosity*. The members of the class are so numerous that their individual joinder is impracticable. Plaintiff estimates that there are tens of thousands of class members. The precise number of class members is known by the defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

23. *Existence and Predominance of Common Questions of Law and Fact*. Common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Wells Fargo improperly collected the Tax Service Fee from its borrowers who directly paid their real property taxes;

(b) whether the alleged conduct constitutes violations of the laws asserted herein;

(c) whether plaintiff and class members are entitled to restitution, damages and an award of punitive damages; and

(d) whether plaintiff and class members are entitled to injunctive relief to stop defendants' ongoing misconduct.

24. *Typicality*. Plaintiff's claims are typical of the claims of the members of the class in that he is a member of the class he seeks to represent.

25. *Adequacy of Representation*. Plaintiff will fairly and adequately protect the interests of the members of the class. Plaintiff has retained counsel highly experienced in consumer class action litigation, and plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the class.

26. *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The financial detriment suffered by individual class members is small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendants. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.

1  Individualized litigation would also increase the delay and expense to all parties and the court
2  system from the issues raised by this action.  Further, the adjudication of this action presents
3  no unusual management difficulties.

4  27.  Adequate notice can be given to class members directly using information
5  maintained in defendants' records or through notice by publication.

6  28.  Unless a class is certified, defendants will retain monies received as a result of
7  their conduct that was illegally and unjustly taken from plaintiff and proposed class
8  members.  Unless a classwide injunction is issued, defendants will continue to commit the
9  wrongful alleged against residential mortgage borrowers.

## COUNT I

### Violations of the Business & Professions Code §17200, *et seq.*

29.  Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

30.  Defendants' business practices as alleged above violate California's Unfair Competition Law ("UCL"), California Business & Professions Code §17200 *et seq.*, which was enacted to protect the public from unscrupulous business practices.

31.  Business & Professions Code §17200 prohibits any "unlawful ... business act or practice."  Defendants have violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, wrongfully taking class members money in violation of the law on conversion, money had and received, and in breach of contract.  Defendants have also violated the Dodd Frank Act, Unfair, Deceptive, or Abusive Acts or Practices ("UDAAP"), 12 U.S.C. §5536(a)(1)(B) by engaging in unfair and abusive acts or practices in the course of providing consumer financial products or services.

32.  Plaintiff and the class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

33.  Business & Professions Code §17200 also prohibits any "unfair ... business act or practice."

34. Defendants acts and business practices as alleged herein constitute "unfair" business acts and practices within the meaning of Business & Professions Code §17200, *et seq.* in that its conduct is substantially injurious to consumers, offends public policy including the stated congressional policy that borrowers should be protected from unfair, deceptive or abusive practices by providers of financial products or services (12 U.S.C. §5536), and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

35. There were reasonably available alternatives to further defendants' legitimate business interests, other than the conduct described herein. The justifications for defendants' unfair business practices were and are vastly outweighed by the adverse effects of the conduct on plaintiff and the members of the class.

36. Defendants' conduct caused and continues to cause substantial injury to plaintiff and the other class members. Plaintiff has suffered injury in fact and has lost money as a result of defendants' unfair conduct.

37. Defendants thus engaged in unlawful and unfair business acts and practices, entitling plaintiff to judgment, restitution, and equitable relief against defendants, as set forth in the Prayer for Relief.

38. Additionally, pursuant to Business & Professions Code §17203, plaintiff seeks an order and injunction requiring Wells Fargo to immediately cease it unlawful business practices.

**COUNT II**

**Conversion**

39. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

40. Plaintiff and the members of the class had an ownership interest in the funds they deposited into escrow. Defendants wrongfully took possession of plaintiff's and the class members' money by obtaining the Tax Service Fee but have not paid the real property taxes on behalf of plaintiff or the class.

41. At the time defendants took possession of the Tax Service Fee defendants knew that an escrow account had not been established for the payment of plaintiff's or other class members' real property taxes, knew that plaintiff and the other class members had waived escrow in order to directly pay their real property taxes, and knew that no escrow account services would be provided for the settlement charge at issue. Defendants' conversion of the Tax Service Fee knowing that no escrow services or payment of real property taxes would be provided was intentional, willful, wanton and malicious. Plaintiff and the class have been damaged in amounts to be proven at trial.

## COUNT III

## Money Had and Received

42. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

43. Plaintiff and other class members paid to defendants, and defendants retained, monies which it would be inequitable for defendants to continue to retain.

44. The payment by plaintiff and the other class members of the Tax Service Fee described above was done as a result of mistake of fact or ignorance of law, reliance on misrepresentations that amounts were due when such amounts were not due, coercion or duress, defendants' violation of the parties' contractual agreements, and/or pursuant to void or voidable contracts. The payment of these excess monies created an indebtedness on the part of defendants to plaintiff and the other class members.

45. As a result of defendants' unjust collection and retention of the Tax Service Fees, defendants are indebted to plaintiff and each of the other class members in a sum certain, the amount of which can be proven at trial by reference to defendants' own records. It would be inequitable for defendants to retain said sums, and plaintiff and the other class members are entitled to recover said sums as money had and received by defendants from plaintiff and the other class members, and as damages for it.

## COUNT IV

### Breach of Contract

46. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

47. Plaintiff and each class member entered into contracts with defendants by which plaintiff and class members agreed to pay for the settlement services provided to them by defendants or other third parties who provided settlement services in connection with the subject loan and real estate transaction. Plaintiff and each class member further agreed that in exchange for the waiver of property tax escrow services, they would timely pay their real property taxes, would timely provide evidence of payment to Wells Fargo upon its request, and would pay any expenses incurred by the loan servicer to correct a delinquent tax payment. The escrow waiver meant that Wells Fargo would provide no escrow account services to plaintiff and other class members and would not pay their real estate taxes.

48. Defendants breached the terms of the contract with plaintiff and the class by charging and collecting a Tax Service Fee when they did not pay real property taxes or provide escrow account services on behalf of plaintiff or the members of the class.

49. All conditions precedent to defendants' liability under the contract have been performed by plaintiff and the class, including the payment for the settlement services actually provided by defendants.

50. As a direct and proximate result of defendants' breach of contract, plaintiff and the other class members have been damaged in amounts to be proven at trial.

### PRAYER FOR RELIEF

Wherefore, plaintiff prays for a judgment:

A. Certifying the class as requested herein;

B. Awarding plaintiff and the proposed class members restitution;

C. Awarding injunctive relief as permitted by law or equity, including enjoining defendants from continuing the practices as set forth herein, and directing defendants to

1  identify, with Court supervision, victims of its conduct and pay them restitution of all monies

2  acquired by defendants by means of any act or practice declared by this Court to be wrongful;

3      D.    Awarding plaintiff and the Class punitive damages;

4      E.    Awarding attorneys' fees and costs; and

5      F.    Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 4, 2012

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
PAULA ROACH (254142)

By:    s/ *Timothy G. Blood*
       TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
proach@bholaw.com

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed June 4, 2012.

s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com