IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD M. GUTIERREZ, on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>WELLS FARGO BANK N.A. d/b/a/ WELLS FARGO HOME MORTGAGE and WELLS FARGO REAL ESTATE TAX SERVICES LLC,<br><br>    Defendants.<br>                                                                   / | No. C 12-1135 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |

Defendants' motion to dismiss the first amended complaint is scheduled for a hearing on August 10, 2012. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. The case management conference scheduled for August 10, 2012 is also VACATED. For the reasons set forth below, the Court GRANTS the motion to dismiss and GRANTS plaintiff leave to amend the complaint. If plaintiff wishes to amend the complaint, plaintiff shall do so by **August 22, 2012**. The Court will hold an initial case management conference on **November 16, 2012**, at 2:30 p.m.

**BACKGROUND**

On March 7, 2012, plaintiff Ronald Gutierrez filed a putative class action against Wells Fargo Bank N.A. d/b/a/ Wells Fargo Home Mortgage and Wells Fargo Real Estate and Tax Services, LLC (collectively "Wells Fargo"). On June 4, 2012, plaintiff filed a first amended complaint ("FAC"). The FAC alleges that Wells Fargo issued two home loans to plaintiff on his real property located at 514 4th

Ave., San Francisco, California. FAC ¶ 7. The FAC alleges that in connection with both loans, Wells Fargo charged plaintiff a $65.00 "Tax Service Fee" even though it provided no tax service to plaintiff. *Id*. ¶¶ 1-3, 7.

The FAC alleges that the Tax Service Fee is collected by Wells Fargo at the close of escrow to cover Wells Fargo's costs of handling payment of real estate taxes assessed on property financed by loans originated by Wells Fargo. *Id*. ¶ 2. The FAC alleges that "the Tax Service Fee is properly collected from a borrower when Wells Fargo establishes an escrow account and pays real property taxes on that borrower's behalf." *Id*. However, according to the FAC, about 10% of borrowers with a Wells Fargo home loan directly pay their own real property taxes. *Id*. ¶ 3. For these borrowers, including plaintiff and the putative class members, Wells Fargo does not establish an escrow account for the payment of taxes and does not pay the borrowers' real estate taxes. *Id*. Wells Fargo explicitly warns borrowers who waive the escrow account that Wells Fargo will provide them "[n]o escrow services" for "payment of taxes." *Id*. ¶ 12.[1] The FAC alleges that "[n]onetheless, Wells Fargo charges and collects the Tax Service Fee from these borrowers, while providing no tax service." *Id*.

The FAC alleges the "Tax Service Fee is listed as an 'Additional Settlement Charge' on the HUD-1 settlement statement." *Id*. ¶ 13. The FAC states that "[t]he HUD-1 settlement statement, as described by Wells Fargo to its borrowers, 'itemizes the services provided to you and the fees charged for those services.'" *Id*. (quoting HUD-1 settlement statement). The FAC continues, "[a]s described by Wells Fargo, the Tax Service Fee 'covers the cost of your lender engaging a third party to monitor and handle the payment of your property tax bills.'" *Id*. ¶ 10.[2] The complaint alleges claims for (1)

---

[1] The FAC does not identify the source of this quotation.

[2] The FAC does not identify the source of this quotation. However, plaintiff's opposition states that the quotation is taken from the Settlement Cost Booklet that was provided to plaintiff as part of Wells Fargo's disclosure documents. *See* Plaintiff's Opp'n to Def's Request for Judicial Notice at 2:8-22. The Settlement Cost Booklet is titled "Shopping for Your Home Loan" and is prepared by the U.S. Department of Housing and Urban Development. *See id*., Ex. A. Plaintiff objects to the version of the HUD Settlement Cost Booklet submitted by defendants because(1) plaintiff's booklet was provided as part of Wells Fargo's disclosure document and appears (consecutively numbered) near the middle of Wells Fargo's 104 page "Disclosure documents" publication; (2) each of the consecutively numbered pages in Wells Fargo's "Disclosure documents," including the Settlement Cost Booklet, contains a

violations of the California Business & Professions Code § 17200; (2) conversion; (3) money had and received; and (4) breach of contract.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is

---

footer that reads "©2011 Wells Fargo Bank, N.A."; and (3) the Settlement Cost Booklet provided to plaintiff does not include the final "U.S. Department of Housing and Urban Development" page reproduced as page 49 of defendant's version.

Defendants respond that aside from the differences identified by plaintiff, the text of plaintiff's version and defendants' version is identical. Defendants do not object to the Court taking judicial notice of the version submitted by plaintiff. Accordingly, because the Complaint quotes from the HUD Settlement Cost Booklet and because the parties do not dispute the authenticity of that document, the Court will take judicial notice of HUD Settlement Cost Booklet submitted by plaintiff. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998) (holding that documents not physically attached to the complaint may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them). The Court addresses the other documents submitted by defendants *infra*.

inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.  Deed of Trust**

Defendants move to dismiss the complaint for failure to state a claim. Defendants contend that the Tax Service Fee is explicitly authorized by plaintiff's Deed of Trust. The Deed of Trust states that Wells Fargo "may require [plaintiff] to pay a one-time charge for a real estate tax verification and/or reporting service used by [Wells Fargo] in connection with this Loan." Defs' Request for Judicial Notice, Ex. A § 4; Ex. B. § 4. Defendants argue that the deed in no way conditions this fee on the payment of property taxes from an escrow account. According to defendants, this language and the surrounding context demonstrates that the Tax Service Fee is not for the payment of property taxes from an escrow account, but rather to verify that plaintiff's property taxes were paid. Defendants assert that this service is even more important when the borrower is charged with the responsibility of paying his own property taxes, as was the case with plaintiff.

Defendants rely on the following language from the Deed of Trust:

> **4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.
> Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

4

> proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Interest. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.
>
> Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

Defs' Request for Judicial Notice, Ex. A § 4

Wells Fargo argues that the language in Section 4 of the Deed of Trust stating that "Wells Fargo may require plaintiff to pay a one-time charge for a real estate tax verification and/or reporting service used by Wells Fargo in connection with this Loan" does not suggest that Wells Fargo's entitlement to charge this fee is conditioned upon the establishment of an escrow account for the payment of property taxes, nor does this language suggest that the fee is charged for the establishment of an escrow account or the payment of funds from such an account. Instead, Wells Fargo argues that the Deed of Trust states that the fee is for the "verification" and "reporting" of the payment of property taxes. Wells Fargo asserts that "[i]t is clear that the purpose of the fee is to verify that plaintiff's property taxes were paid on time to prevent tax liens on the property." Defs' Motion at 6:2-3.

Plaintiff objects to the Court's consideration of the Deed of Trust because the Deed of Trust is not part of nor referenced in the Complaint. Plaintiff also argues that the Deed of Trust does not describe loan settlement costs. Plaintiff contends that the charges discussed in the Deed of Trust are post-closing charges that might be incurred during the course of the loan. Plaintiff asserts that Section 4 of the Deed of Trust applies when there is a lien on the property, and permits Wells Fargo to charge for a "real estate tax verification and/or reporting service." Plaintiff asserts that "the fee described in Section 4 has nothing to do with the Tax Service Fee collected for monitoring and handling the annual property tax payments on behalf of escrow to borrowers." Pl's Opp'n at 8:9-11. Plaintiff asserts that Wells Fargo does not need to hire a tax reporting service to verify the borrower's property tax payments because it already requires payment verification directly from its borrowers.

A court may take judicial notice of "matters of public record" without converting a motion to

1 dismiss into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). However, a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b); *see Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding district court improperly took judicial notice of disputed matters on motion to dismiss). Here, defendants request that the Court take judicial notice of the Deed of Trust in order for the Court to conclude that Section 4 of the Deed of Trust permits Wells Fargo to charge the Tax Service Fee. The Court cannot take judicial notice of the Deed of Trust for this purpose. Defendants' interpretation of the Deed of Trust may be correct, but at this stage of the litigation the Court cannot hold as a factual matter that the Deed of Trust authorizes the Tax Service Fee.

## II.     HUD Settlement Cost Booklet

Defendants contend, and plaintiff does not dispute, that plaintiff's theory regarding the allegedly improper Tax Service Fee is based upon language contained in the HUD Settlement Cost Booklet. The HUD booklet defines "Tax Service Fee" as:

> **Tax Service Fee**: this fee covers the cost of your lender engaging a third party to monitor and handle the payment of your property tax bills. This is done to ensure that your tax payments are made on time and to prevent tax liens from occurring.

HUD Settlement Cost Booklet at 76 (Plaintiff's Opp'n to Def's Request for Judicial Notice, Ex. A). Plaintiff contends that Wells Fargo does not "monitor and handle the payment" of property tax bills for borrowers like plaintiff who paid their own property taxes. Plaintiff emphasizes the fact that Wells Fargo only permits borrowers to pay their own property taxes after, among other things, the borrowers prove a history of savings and a history of paying their taxes without delinquencies, and after they provide tax payment receipts. FAC ¶ 12.

Defendants contend that the HUD Settlement Cost Booklet cannot provide the basis of plaintiff's claims for a number of reasons. Defendants contend that the HUD Settlement Cost Booklet, which is a booklet published by HUD and which Wells Fargo is required by law to distribute to borrowers, is irrelevant because the booklet is not a contract between Wells Fargo and plaintiff.

Defendants also assert that the booklet is not a "rule, regulation or interpretation thereof . . . ." 12 C.F.R. § 3500.4(a)(1)(ii). In any event, defendants contend that the HUD Settlement Cost Booklet does not support plaintiff's theory because the booklet describes the Tax Service Fee as "the fee paid to a tax service provider for information on the real estate property taxes." HUD Settlement Cost Booklet at 61 (Plaintiff's Opp'n to Def's Request for Judicial Notice, Ex. A). Defendants assert that this description is entirely inconsistent with plaintiff's theory that the tax service is for payment of property taxes from an escrow account. Defendants also argue that plaintiff ignores the second sentence of the booklet's definition of "Tax Service Fee," which states that the tax service is "done to ensure that your tax payments are made on time and to prevent tax liens from occurring." *Id*. at 76. Finally, defendants note that under plaintiff's theory, the lender itself performs the service (payment of property taxes from an escrow account), yet the booklet states that the tax service is not performed by the lender but by a "third party" "tax service provider." *Id*. at 61, 76. Plaintiff does not respond to these points except to reiterate the assertion that Wells Fargo does not "monitor and handle the payment" of property tax bills for borrowers like plaintiff who paid their own property taxes.

The Court concludes that the HUD Settlement Booklet does not support plaintiff's theory that the Tax Service Fee was improperly assessed. Neither the complaint nor plaintiff's opposition explains the legal relevance of this booklet. Moreover, the Court agrees with defendants that even if the booklet is relevant, the language of the booklet does not prohibit Wells Fargo from charging plaintiff the Tax Service Fee at issue. Nothing in the booklet states that "tax service" means only the payment of property taxes from an escrow account or that a lender may not charge a tax service fee unless it pays the borrower's property taxes. The booklet's description of the Tax Service Fee as "the fee paid to a tax service provider for information on the real estate property taxes" is consistent with the assessment of that fee for a real estate tax and verification and reporting service.

For these reasons, the Court concludes plaintiff has not "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As plaintiff's reliance on the HUD Settlement Booklet underpins all of plaintiff's

7

claims, the Court GRANTS defendants' motion to dismiss and GRANTS plaintiff leave to amend the complaint. If plaintiff chooses to amend the complaint, plaintiff must specifically allege why the Tax Service Fee is unlawful and/or improperly assessed. In addition, if plaintiff pursues a breach of contract claim, plaintiff must identify the contract that defendants allegedly breached. *See Walters v. Fidelity Mortg. of California*, 730 F. Supp. 2d 1185, 1199-1200 (E.D. Cal. 2010).

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion to dismiss with leave to amend. Docket No. 21. If plaintiff wishes to amend the complaint, plaintiff shall do so by **August 22, 2012**. The Court will hold an initial case management conference on **November 16, 2012**, at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: August 8, 2012

SUSAN ILLSTON
United States District Judge

8